The next case is Stevens Medical Station versus San Jovian Ceramics, 2010, 11-45, 11-77. Welcome back, Mr. Phillips. You've had a busy day. It's always a pleasure, Mr. Phillips. We're very pleased to be here. May it please the Court. The fundamental issue in this case is an issue the Court identified in one of the many iterations of FESTO. This one happened to be in 2007. But it deals with the fundamental issue of what is the relationship between the doctrines and equivalents and the fact that the subsequently issued patent covers directly the infringer's particular product. The real issue is you're asking us to change our standard for proof of infringement, which is very convincing. In a very limited circumstance, Judge Lawyer, we are asking you to do that. Or at least, you can either change your standard or at a minimum, you have to come up with some kind of instructions of the jury that satisfies what the Court said in FESTO, which is that it makes it considerably more difficult for the patent holder to prove infringement. Didn't the judge here so instruct the jury? No, to the contrary. I think what Judge Robinson did here was essentially throw her hands up in the air. As she said, that in connection with this evidence, I instruct you that a product that is covered by a subsequent patent may still infringe. I don't have any dispute with that statement, but it doesn't exactly give us much confidence. She says there may be some evidence that the difference is unsubstantial. Presumably, it also may not be some evidence. I mean, she didn't give the jury any guidance as to what to do with the subsequently adopted, enacted, approved patent. Isn't her instruction consistent with the statement in FESTO? It's simply a recognition of the reality that if you're trying to establish equivalence under the Doctrine of Equivalence in the face of a subsequent patent that covers the device, that that's going to make that argument a more difficult one. It's a factual matter sticking. Well, I suppose it depends on how you want to interpret what the Court said in FESTO. I don't believe FESTO merely was a statement of fact that it will make it more difficult. What I think the Court was saying is that it's important. It was a call for a new standard in applying infringement. Well, it would seem to me at a minimum, Judge Linnan, that it ought to reinforce the importance at least of giving the instruction that the subsequent patent is entitled to a presumption of validity. And Judge Robinson expressly refused to allow that instruction. And at least if we had had that instruction, we would have been in a position where it might have been, I still don't think, considerably more difficult for the client. But that statement begs the question. It doesn't answer it. I mean, I have some sympathy to your position. I just think that we bump up against precedent pretty quickly wherever we go. Just to tell the jury it's entitled to a presumption of validity gets you weird. What does that mean? I mean, at the extreme, it would mean that therefore there can be no equivalent. But I'm not sure how one is supposed to interpret just an instruction that says the 420 patent is presumed valid. Well, at a minimum, that would suggest that there is some greater significance to the 420 patent. And remember, again, this is a situation in which the plaintiff in an opening statement, plaintiff's counsel in an opening statement, in an extended period of time during the examination of Sangoban's counsel, and in a closing statement challenged the validity of the Chai patent. So that when we get to this point in this process, all we're told by the judge, all the jury is told is it may be some evidence. And here's this challenge on the validity. And the counsel has left the question of validity on the table. And we ask for a jury instruction that says, at a minimum, tell the jury that there's a presumption of validity. Wasn't that in the film shown to the jury? It was in the film at the very outset. But it seems to me that that's before any of the testimony challenging the validity. How are you supposed to do it? What do we expect the jury to be able to do in a circumstance in which counsel's been allowed, and I think legitimately allowed, to challenge the validity of the patent repeatedly, and presumably with some force? It seems to me at that stage, it is incumbent upon the court at the back end to reaffirm that fundamental principle. Because at a minimum, that will move the ball back to the point where it is more difficult to prove the relationship between equivalence and then something else. But it's not precluded from making that point as well. They can argue invalidity. You can argue the presumption of validity and everything that's valid about the patent. Right. But there is no substitute for a jury instruction. That it's unquestionably true as a matter of law. There's no debate about, is that a valid jury instruction? Of course it is. All you're really going to say is that somehow it was harmless error not to tell the jury the fundamental legal standard that applies at the point in time when you're saying, these are the legal rules you should take literally. Can I get back to Judge Lurie's first point, which is the alternative. You asked for the presumption of validity. You asked for the alternative for clear and convincing evidence. And I'm having a hard time, based on what Judge Lurie said, from reconciling that with oppressive. I mean, has the panel agreed to create the exception to the rule with respect to what the standard is for infringement? Well, I don't think the precedent resolves that. I think what the court said in festo, and I'll read it to you real quickly. We have not directly decided whether a device may be captured by the doctrine of equivalence, although we have held that when a device that incorporates the equivalent is in fact the subject of a separate finding, a finding of equivalence, perhaps not necessarily legally foreclosed, at least considerably more difficult. I read that statement as saying this court has not decided, as a matter of law, what is the method by which you establish that it is considerably more difficult for the plaintiff to prevail. Well, we've got national presto, and that says the fact of separate patentability is relevant and is entitled to due weight. I guess one has to decide what due weight is. Right. I mean, what if the judge included that statement in the jury instruction? Would that have been sufficient? I think it would be harder for me. I think I would still argue that the jury is entitled to more information about exactly what to do with the logic, with the logical conundrum that's created by the doctrine of equivalence and the patent. I mean, you know, let's focus on this for just a second from Sangoban's perspective, because it seems to me they did precisely what you would want someone to do. I mean, they looked at this patent. They found another patent that's separately issued that can provide them with the same ability to compete in that particular market. They went out and got a license on it. In fact, they got two licenses on two separate patents that were issued subsequent to the patent, both of which made reference to the earlier 080 patent. They also sold LSO, which was patented, sold something with only 10% of the not-too-different variant of it. Well, they used LYSO, but that is the core patent. That's not what you're saying from Sangoban's point of view. Let's look at what Sangoban did and where they were. They were making just a small change in a patented material. Well, I suppose it depends on how you – I mean, I suppose in some ways that begs the question whether it's a small change. That small change was given a separate patent. And therefore, at least from the PTO's perspective, it cannot be viewed as an insubstantial change. And see, that's the whole key to this. They sold 90% of what was patented. Well, actually, it's a separate crystal, though. They sold 90% of what was patented. I can't dispute the percentages, to be sure, but the bottom line remains. It was given a separate patent because the PTO made that determination. It seems to me at some point, this court's got to come to grips with that problem. Is that the case, though? I mean, by granting a separate patent, your view is that as a matter of law, the patent office had to conclude that this was not more than an insubstantial change? I think that's the only inference that you can draw, or certainly a very strong inference that you would draw from those particular circumstances, particularly when we're talking about a situation where the subsequently issued patent made specific reference to the prior patent that is the basis for the claim of infringement in this particular case. The difficulty, though, is equating substantial and insubstantial to words of patentability, such as novelty and utility and non-obviousness. The two, they're not exactly the same thing, right? Well, to be sure, but what the court said in festo, and I don't see any reason to walk away from it, is there is a strong argument that an equivalent cannot be both non-obvious and insubstantial. And I would say the argument is beyond strong. I think it is conclusive, and the court ought to embrace it and recognize that fact for the very reason that we're facing here in San Goban, because they are looking at two separate patents. They get licensed under one of them. They enter the market. They compete aggressively. I mean, the truth is there is a limit to what the patentee is entitled to. And you need the market to limit that. And the doctrine of equivalence obviously extends it. But too far in the direction of granting privileges under the equivalence doctrine puts you into a very anti-competitive situation, and that's precisely what we have here. We take a product for which they make no profit and give them for $50 million for doing what I think our economic system, candidly, wants them to do. If we embrace this idea that something that is patented, can it be equivalent because you can't have something, something can't be unobvious and equivalent at the same time, doesn't that really inject into every doctrine of equivalence patent infringement case a potential question of both infringement and validity of subsequent patents? Only if there's a subsequent patent under these circumstances. The accused party is, you know, a patentee wants to make the argument that you infringe under the doctrine of equivalence. The accused party can hunt around for another patent that was subsequently granted, then make the argument that, you know, what I'm selling is the same device. Maybe it goes out and gets a license, I don't know. He's going to make the argument that, well, it's the same device, so there's an infringement case that has to be decided, and then possibly a validity case that has to be decided. It seems to me this opens up a whole can of worms when the concepts, as Judge Gross points out, the concepts of obviousness and the concept of equivalence are really quite different. They're very close, and I realize there's considerable overlap. And did this court specifically recognize that there's considerable overlap here? It seems to me, I don't know that it's free for the panel at this stage to say, okay, we're going to decide actually there's not considerable overlap and that they're sufficiently distinct. I also don't think this is some kind of a license to go out and try to interfere with somebody's patent particularly. I mean, I don't think Sandra Bond would say that this process has been a particularly satisfying one for them and that they would encourage others to follow this course. But in some ways that's unfortunate. It makes precisely the point I was trying to make a minute ago, which is what you really do want to say is, okay, what's the limit of your patent? Now, how far are you going to take the doctrine of equivalence to interfere with the ability of somebody to avoid the monopolization and the economic consequences that come from monopolization? It seems to me a good point to draw that line is to say there is a subsequently issued patent. What about Atlas Power? I'm sorry? Doesn't what you're advocating here really bump up against Atlas Power? Well, I mean, there's a statement in Atlas Power to be sure that says, and put it in context, Atlas Power, the case itself, there was no claim at the trial level about the subsequently issued patent. The court was asked to take judicial notice on appeal of the patent and then evaluate whether it made any difference. And in that context, the court said, well, we're not going to just assume that a subsequently issued patent will get you there. And that's fine. But that's not the argument we have here. We're dealing with a situation where Siemens embraced the relationship between these two patents, recognized it, and challenged the validity of the subsequently issued patent. In that particular context, it seems to me incumbent on the court to provide the jury with something to help them evaluate it beyond simply saying it may be some evidence. Well, every piece of evidence may be some evidence. That can't possibly help the jury understand the fundamental relationship between those documents. And it's bad enough to not give us some heightened standard of proof. But at a minimum in this case, we should have been entitled to get a jury instruction on the presumption of validity. And that we didn't get. And there's simply no argument on the other side, as far as I'm concerned. And for this case to come out and be at all consistent with the notion that it is considerably more difficult for the patent holder to prove infringement in a case just like this one. Because even Judge Robinson recognized this is the precise case that the court articulated and identified in Festo. Mr. Phillips, you wanted to say three minutes. We'll give you three minutes to apologize back. I appreciate that. In the meantime, we'll hear from Mr. Picasso. If we support the Festo language, it does not support the sweeping proposition the Sandberg ban would make. It is descriptive and not normative. It is not. It shall. It's not a change in the law that starts with Atlas Powder at this court, although it precedes this court's existence. It goes into Hooks, Salonese, Abraxas, and other cases that have dealt with this exact issue. Where there is a subsequently issued patent, is that relevant? There was a line that maybe thought it shouldn't be relevant at all. This court has said it may be relevant. The most recent decisions, most recently Abraxas, says may be relevant. Judge Robinson took that to heart. No, he said it should be given due weight. And the question is, what do weight mean? And that's when the National Press Substitution did a post. And the same court said, such evidence when presented warrants consideration by the trier of fact, in this case the jury, along with other evidence of the differences and similarities of the patented and accused devices. Is it the same that happened here? Absolutely. At first hand, it was considerably more difficult to prove. But with an adequate jury deconstruction, that's the question. Correct. And in this case, we certainly believe Judge Robinson's instruction was in some ways not only adequate, it went further than this court's law. It is. Is the validity of the 420 patent an issue in this case? It is not, Your Honor. It was not. Why was any testimony relevant with regard to validity? The testimony with respect to the validity, Your Honor, as Judge Robinson pointed out several times, went not to the infringement question. It went to two intent-based issues, willfulness and the intent prong of inducement. And on that ground, Sandovan put the 420 patent, the CHOT patent, at issue in this case. So you're saying that the validity of the 420 patent was at issue. It was not at issue. The ways it could be at issue, Your Honor, was that it was at least relevant. I don't even believe, Your Honor, that on the question of infringement, the validity of that patent, Your Honor, is not relevant. The relevance, you're arguing, was relevant to at least other aspects of the case. Their belief in the validity or enforceability of the patent, the defendant's belief, it was the basis. The CHOT patent was, in large part, the centerpiece of their defense. And the reason it was at all germane in terms of validity and enforceability went to Sandovan put two lawyers on the stand. And those two lawyers both testified and had documents in their files that questioned this idea that this was the right thing to do. They had questions at a low Israel concentration if this would solve the problem. And they talked about its questionable validity and questionable enforceability. And so when they sat there and explained to the jury their opening line on the opening statement, it was we're not thieves. When that became the issue, well, certainly then their own subjective knowledge of whether they believed what they were saying on the stand came in. And Judge Robinson, two or three different times on the record, points out, this is why I'm allowing any of this, because it goes to willfulness and it goes to intent. So their beliefs, not their validity. Absolutely. And twice, I think, Judge Robinson puts that in Jay, 1670 and 1745. She makes that exact point. Quote, the only reason the weakness of the CHOT patent is relevant is to the subject of intent and willfulness. So I think it's a matter for you all to argue. Can I try to direct your attention? We were talking about FESTO. When I went back to FESTO, I don't know what number it is, but the Supreme Court's 2002 opinion in FESTO, in which it describes equivalence as to claim those insubstantial alterations that were not captured in drafting the original patent claim, but would be created through trivial challenge. Doesn't that seem to you to be in tension with the notion that you could get a patent on them? I don't believe there's tension there. And if you also look, Your Honor, Supreme Court opinion. But you can get a patent on trivial changes that would have just been captured in a drafting error in terms of the original patent? The question as to whether one gets a patent or not on the second patent is, as Your Honor pointed out, novelty and non-obviousness. The question of non-obviousness is one at the time of invention as to whether one of skill in the art would identify over the prior disclosures. Certainly not looking at the claims of the earlier patent and the function away result test, no interchangeability, insubstantial differences. There is a difference. And primarily, that difference is hindsight. The question of doctrinal equivalence is a factual question determined at the time of infringement. And something then very well may be obvious at the time of infringement. But whether that was non-obvious at the time of patentability, the second patent, doesn't control the question. Here, the patent on its face goes from the smallest amount of vitriol to the entirety of vitriol, the entire continuum between what is an LSO crystal and what is a YSO crystal. And the evidence in this case, I've said that it was substantial, considerably more difficult to prove, consistent with the language in Festa, when every day in district court, you hear that the Patent Office gave us a patent on it. The argument from San Gilbert's counsel was that the Patent Office found that a substantial difference. That they were entitled to a presumption, as was pointed out in the judge aloud. In the face of that, it was considerably more difficult to make out. But as this court has found in several cases, it is a fact for consideration. And here, Judge Robinson made it the only fact in the charge. I certainly would have preferred and thought it would be more balanced under this idea that it may be considered, and it's off fact, to identify, for instance, head-to-head testing, the admissions of their own experts, their own documents called the equivalent, identical, and several other words that mean exactly the same thing. That was, of course, not in the charge. That's left for counsel to argue. The only fact on equivalence put into the charge by the judge here was San Gilbert's defense, that it may be an evidence of substantial difference. And given that, and given the language, both of Supreme Court of Festa and Warner-Jenkinson, that there's no magic linguistic test that this court should decide, the test is ultimately equivalence, primarily measured by functional result. Let's look at this crystal. This is another. But what's the problem with putting in a statement of jury instruction that the patent is presumed valid? That's like amplifying a mother. What's controversial about that? Why would you ever object to that? The basis for the objection, Your Honor, is, as I think your question before raised, it leads to one of two things. First of all, we don't disagree it's a correct proposition of law. No one does. But that's not the standard for whether it should be in the charge. In the charge at this point, including that or not is an issue of abusive discretion at this stage as to whether it's an abuse of Judge Robinson's discretion to include the validity charge. Sandberg and themselves didn't have a counterclaim, so there was no invalidity issue in the case of that sort. They admitted, when they argued for the charge, that it was not at issue in this case, J1669. And at that point, our concern was confusion. In one of two ways, both bad, as confusion tends to be at trial. One, that the jury would think there was a question about the validity of the 080 patent, the patent in suit. There was no challenge to the validity of it. The jury need not now hear talk about validity in the charge. That's the first possible confusion. The second, and I contend probably the more likely, and why Sandberg wants it in the first place, is it would suggest to the jury and beg the questions that seems needed to prove that the patent wasn't valid. And as Potter recognizes this from even the earlier line of cases, the Youngstown case and others that speak to, the two are different. One need not prove the invalidity of a subsequently issued patent in order to infringe that subsequently issued patent. That is not certainly the standard for literal infringement. It is neither the standard for the doctrine of acquittance. There is no constructive, practical, whatever word Sandberg wants to put on it, invalidation of child, because the jury found it's a factual question. That's sprinkling in the smallest amount they could come up with that would still have the same performance. And the evidence on that, they don't challenge, notably, substantial evidence on the question of equivalence, because they can't. And overwhelmingly, there's head-to-head test data, J2597. There are two experts prior to being retained in the case. One had said the properties are very similar. The other called 10% why. Ellis over the yttrium impurity. The factual evidence in this case was overwhelming. And thus, like in the Bractus-Ellis-Powder National Cresto, balancing those facts on the intrinsically factual question, which both sides agreed is one of the most factual questions that regularly is presented, the doctrine of equivalence. On that evidence, the jury found they infringed. It was 10% isn't impurity. And as Mr. Phillips pointed out, it forms a different crystal shape. And that is a fact question. The jury heard in other examples of the evidence that 10% yttrium. At that one point, that's the accused product and how it's allegedly covered by the child patent. Sandy Wain's doctrines, J2546, properties are equivalent to LSO. 2895, it's almost identical in LSO. Phillips' doctrines, it has nearly identical characteristics with 5% to 10% yttrium, J3114. There was overwhelming evidence that this particular crystal, not everything that Chai's claim purports to cover, not upper boundary yttrium, and a small amount of yttrium, the accused product and the proper analysis of the district court, was to test that product. And under the functional end result test, it was determined infringed. Their own witness said they were interchangeable, J1071. And the jury found on all of the tests I contend for infringement of the doctrinal equivalence that this particular crystal did infringe. And this court has found it is not a presumptive bar by any stretch to infringement, which is what I think suggests the law may change to. In this situation, it may as a matter of law preclude it from infringement. This court has several times rejected that proposition. The fallback, where I believe it's quite a convincing standard is, is that there ought to be a presumption of non-infringement. They even equate the two at one point in their brief. This court has rejected that proposition as well. And every case since, it is a fact to consider. And I can tell you firsthand, in the face of arguments about the CHOT patent being issued by the PTO, in the face of hearing that that alone is a substantial evidence of substantial difference, it was, with all respect to the language in Festo, considerably more difficult to make out. And as an aside, the language in Festo draws its support from this same line of cases. The citations to it, Atlas Powder, National Presto, Blacks are Welcome, they all stand for the proposition that rejects the ID in Sandler-Benz brief of elevating the standard. Certainly none of these cases look to importing a higher standard or a presumption. Now, the accused material is not the sum total of the court's work. It is not, correct. It may be true with respect to the accused material in relation to the material of the patent at issue is not necessarily addressing the validity of the total of the court's work. Correct. It's not scope. It's a different scope. And it is one data point on this continuum that, as Samuel Macintyre says, the CHOT patent covers. And the question of what does the CHOT patent cover would lead to, perhaps, Judge Lind's hypothetical scenario, which is every case, most cases, let's assume have a doctrine equivalent tag law to a literal claim. We all read that. There's no fair amount of algebra to determine what that patent covers. At the end of the day, it was never construed, obviously. There was never a prior art identified. The steps one would go through to ultimately get to this question of the validity, the actual merits of the validity of the CHOT patent would become the sideshow of sideshows. We'd have now Markman on second patents. We'd have separate validity cases. Because without question, at least a big company litigation in an area where they happen to both compete, there are going to be other patents that cover the accused of bias under the DOE scenario. And at that point, you could argue even less further. If I don't have a patent covering my product, but somebody else does, I could argue that those folks should sue me, not the plaintiff. And that's my defense under doctrinal equivalence, that I fall under someone else's patent. Or arguably, since the question is patentability, not validity, someone could have gotten a patent on it. But we chose to keep the trade secret and not file. And these questions all present themselves if you go down this road, which I think is changing the law significantly, or rejecting at least four or five cases from this court. Given the scope to argue the other points in his brief, if the court doesn't have any more questions on this issue, we'll rest our briefs and cross the field as well. Thank you, Mr. McCaskill. Mr. Phillips. Thank you, Your Honor. Judge Post, let me reaffirm what I think you've said and why I think it's important. This court has recognized already that you have to identify what is the due weight that has to be given under these circumstances. And what I submit to you is that the instruction that Judge Robinson gave in this case doesn't give due weight to the importance of the subsequently-issued patent, as recognized by this court defesto. On that basis alone, the decision below should be vacated and a new trial should be provided for. The question you asked, Judge Lynn, about validity. Clearly, validity was put into this case. And it was put into this case by counsel. It was in the opening statement. It is in the testimony. And based on questions, leading questions that they asked, it was in the closing. They challenged the validity of it. And having done that, it seems to me particularly difficult for them now to stand here and say, you're not entitled to the one apple pie and mom instruction that you should be entitled to, which is the validity of that patent. Well, as I understood Mr. McCaskill's argument, the testimony with regard to validity was directed to the former's beliefs and intent as it relates to inducement and willfulness and not as to the validity. What puts the lie to that, Judge Lynn, is Judge Robinson's instruction. In considering the issue of infringement under the Doctrine of Equivalence, you may consider that Senator Obama claimed this. And the whole issue goes to infringement. That instruction is dealing with the question of infringement. So the notion that the validity wasn't part and parcel of deciding whether or not there had been infringement is simply not the right way to analyze it. It's not the way the case went to the jury. Or at least it wasn't clear to the jury what the purpose of that is, which is why it was incumbent upon Judge Robinson to explain how these various important and conflicting doctrines have to be reconciled so that the jury can then make the evaluation. His litany of all of the evidence that demonstrates equivalence seems to me to do nothing more than reinforce how critical it was to get something out of the judge that says how you evaluate. Could you take 20 seconds to respond to what I understood Judge Bulley's question to the other side of the different scope of the claims? Oh, sure. Because the Chai Patent covers the entirety of any use of it at all. You have to have some entry, but any amount of entry all the way through to 99.9999%. So it's clear that the Chai Patent covers this. What, of course, is particularly disturbing is that the McClellan Patent, which the judge dismissed out of hand, covers the specific 10% that we're talking about here. And the PTO issued a patent on that, which reinforces the notion that. That lost in interference? It did lose on interference. But the relevance of it still seems to me absolutely unquestionable in terms of saying the PTO, looking at the pre-existing patent and looking at the subsequent invention, concluded that these are not obvious, that these are not insubstantial. You said it, Judge Cross, that the Supreme Court is trying to limit the doctrine of equivalence. It seems to me the other side, Siemens, is trying to expand it. I understand why this court should be faithful to the Supreme Court's statement and bring the doctrine of equivalence back by recognizing that subsequently the subsequent patents, when licensed, provide more than just some evidence that may be, in some sense, relevant to the case you were discussing. Thank you, Mr. Phillips. This case, of course, says scintillation crystals which are scintillating documents. Thank you. Thank you, Your Honor.